**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISON**

| | |
|---|---|
| KEVIN ECKER, | CASE NO. 5:19-CV-01126-JZ |
| Plaintiff, | JUDGE JACK ZOUHARY<br>UNITED STATES DISTRICT JUDGE |
| v. | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| WARDEN CHAE HARRIS, | **REPORT AND RECOMMENDATION** |
| Defendant, | |

## I.       Introduction

Petitioner, Kevin Ecker, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Ecker is an Ohio inmate currently serving a twenty-one-year sentence for trafficking and possession of drugs and involuntary manslaughter. Ecker asserts four grounds for relief. (ECF No. 1). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Ecker's petition and other case-dispositive motions. Because Ecker's claims are either meritless, procedurally defaulted, or not cognizable, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.      Relevant Factual History

The Ninth District Ohio Court of Appeals set forth the following facts on direct appeal:

> J.C.H. was a young woman who struggled with addiction and lived
> at home with her family and three-year-old son. On the afternoon of

March 22, 2015, her family found her body on the floor of her bedroom. There were drugs and related paraphernalia near her body, and it was later determined that she died as a result of a fentanyl overdose. Following a brief investigation, the police identified Mr. Ecker as the individual whom they believed had provided her with the lethal dose of fentanyl.

The police secured a warrant to search Mr. Ecker's residence and executed the warrant two days after J.C.H. died. During the search, they uncovered fentanyl, alprazolam, suboxone, marijuana, needles, digital scales, and drug packaging materials. The police then arrested Mr. Ecker and searched him, whereupon they also found two small bindles of fentanyl in his pocket. . . .

Mr. Ecker remained in jail for some time, but ultimately posted bond. In February 2016, the police went to his new apartment because they received a call that gunshots had been fired at or near that location. While walking through the apartment, officers observed several items that led them to conduct a search. The search uncovered fentanyl, methamphetamine, cocaine, drug packaging materials, a digital scale, and other items.

*Ohio v. Ecker*, 108 N.E.3d 708, 711–12 (Ohio Ct. App. 2018).

## III.    Relevant State Procedural History

### A.    Indictments

On April 9, 2015, Ecker was indicted for:

One count of Aggravated Trafficking in Drugs in violation of Ohio Rev. Code § 2925.03(A)(C)(1), a third-degree felony, with a criminal forfeiture specification

One count of Trafficking in Marijuana in violation of Ohio Rev. Code § 2925.03(A)(C)(3), a fourth-degree felony, with a criminal forfeiture specification

Two counts of Possession of Drugs in violation of Ohio Rev. Code § 2925.11(A)(C)(2), a fifth-degree felony, with a criminal forfeiture specification

One count of Illegal Use or Possession of Drug Paraphernalia in violation of Ohio Rev. Code § 2925.14(C)(1), a fourth-degree misdemeanor

One count of Possession of Marijuana in violation of Ohio Rev. Code § 2925.11(A)(C)(3), a minor misdemeanor

One count of Possessing Drug Abuse Instruments in violation of Ohio Rev. Code § 2925.12, a first-degree misdemeanor

(ECF No. 8-1, PageID #: 59–64).

On July 30, 2015, a supplemental indictment charged Ecker with:

One count of Involuntary Manslaughter in violation of Ohio Rev. Code § 2903.04(A), a first-degree felony

One count of Corrupting Another with Drugs in violation of Ohio Rev. Code § 2925.02(A)(3), a second-degree felony

One count of Aggravated Trafficking in Drugs in violation of Ohio Rev. Code § 2925.03(A)(C)(1), a third-degree felony

One count of Trafficking in Marijuana in violation of Ohio Rev. Code § 2925.03(A)(C)(3), a second-degree felony

(ECF 8-1, PageID #: 65–66).

Then on March 10, 2016, as a result of a 2016 police search of Ecker's residence while out on bail, Ecker was indicted for:

Two counts of Aggravated Trafficking Drugs in violation of Ohio Rev. Code § 2925.03(A)(C)(1), a second-degree felony, with a criminal forfeiture specification

Two counts of Aggravated Possession of Drugs in violation of Ohio Rev. Code § 2925.11(A)(C)(1), with a criminal forfeiture specification

One count of Illegal Use or Possession of Drug Paraphernalia in violation of Ohio Rev. Code § 2925.14(C)(1), a fourth-degree misdemeanor

One count of Possession of Cocaine in violation of Ohio Rev. Code § 2925.11(A)(C)(4), a fifth-degree felony, with a criminal forfeiture specification

(ECF No. 8-1, PageID #: 73–77).

**B.      Motion to Consolidate**

On March 24, 2016, the State moved to consolidate Ecker's 2015 and 2016 criminal cases. (ECF No. 8-1, PageID #: 78). The State asserted that all the charges could have been brought in one indictment, the evidence was simple and direct, and the offenses were of the same or similar character. (ECF No. 8-1, PageID #: 78–82). Ecker opposed the motion and requested a hearing. (ECF No. 8-1, PageID #: 85–86). The trial court held a hearing and granted the State's motion. (ECF No. 8-1, PageID #: 87).

**C.      Conviction and Sentence**

On June 16, 2016, Ecker pled no contest to the two counts of Possession of Drugs in violation of Ohio Rev. Code § 2925.11(A)(C)(2). (ECF No. 8-1, PageID #: 92). The State dismissed one count of Aggravated Trafficking in Drugs and the charge of Possessing Drug Abuse Instruments. (ECF No. 8-1, PageID #: 92). Ecker elected to utilize a bench trial for the charge of Possession of Marijuana where he was found guilty. (ECF No. 8-1, PageID #: 104). On June 16, 2016, a jury found Ecker guilty of all remaining charges. (ECF No. 8-1, PageID #: 93–94). The Court sentenced Ecker to a total of twenty-one years in prison and five years of supervised post-release control. (ECF No. 8-1, PageID #: 107).

**D.      Direct Appeal**

On appeal, Ecker raised four assignments of error:

> I. The trial court denied Kevin Ecker a fair trial and due process of law when it allowed a joint trial of two distinct events.

> II. Mr. Ecker's rights to due process and a fair trial were violated when the trial court allowed the state to present irrelevant and overly prejudicial evidence about prior bad acts.

> III. The prosecutors' misconduct denied Mr. Ecker a fair trial and due process of law, in violation of his Fifth, Sixth, and Fourteenth

Amendment rights under the United States Constitution, Article I,
Sections 10 and 16, of the Ohio Constitution.

IV. The trial court violated Mr. Ecker's right to due process and a
fair trial through cumulative error.

(ECF No. 8-1, PageID #: 154). On March 14, 2018, the Ninth District Court of Appeals of Ohio

affirmed the judgment of the trial court. (ECF No. 8-1, PageID #: 219).

###### E.  Appeal to Ohio Supreme Court

On April 20, 2018, Ecker timely filed a pro se appeal notice in the Ohio Supreme Court.

(ECF No. 8-1, PageID #: 234). Ecker's memorandum in support of jurisdiction raised the following

propositions of law:

1. The trial court denied Kevin T. Ecker a fair trial and due process
of law when it allowed a joint trial of two distinct events.

2. Mr. Ecker's rights to due process and a fair [] trial were violated
when the trial court allowed the State to present irrelevant and overly
prejudicial evidence about prior bad acts.

3. The prosecutors' misconduct denied Mr. Ecker a fair trial and due
process of law, in violation of his Fifth, Sixth, and Fourteenth
Amendment rights under the United States Constitution, Article I,
Sections 10 and 16, of the Ohio Constitution.

4. The trial court violated Mr. Ecker's right to due process and a fair
trial through cumulative error.

(ECF No. 8-1, PageID #: 252). On July 5, 2018, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 8-1, PageID #: 298).

###### F.  Application to Reopen Appeal

On June 5, 2018, Ecker applied to reopen his appeal pursuant to Ohio App. Rule 26(B)

based on ineffective assistance of his appellate counsel. (ECF No. 8-1, PageID #: 299). He stated

that his appellate counsel should have brought the following assignments of error on direct appeal:

1. Ineffective assistance of app[ellate] counsel by failing to assist Appellant in his defense

2. The trial court committed pl[ain] error by advising Appellant that his app[ellate] attorney was ineffective for incorrectly raising a claim of error the wrong way

3. The prosecution does not rely on the record to support [their] argument that defense counsel failed to renew his objections to the consolidation of cases. This is not true. In fact the record supports that during closing arguments on July 22, 2016 transcripts p. 1 line 23-25 and pg 49 lines 7-17 pg 63 line 1-14. This is contrary to what the prosecution is alleging in their argument.

Appellate counsel failed to properly act. This issue leaving out key factors statements in the transcripts if reviewed the outcome of the defendant's appeal would have been different.

4. There was unlimited communication between Mr. Ecker and his two attorneys throughout the whole [appellate] process. A copy of all exhibits has been forwarded. In this error presents pla[i]n error itself when [appellate] counsel refused to [bring] arguments regarding Kevin Ecker's extrem[e] sentencing not considering a lesser sentence and by not raising the Bigger[] issue[s] to the appeals court that the lower court gave Mr. Ecker dou[]ble the amount of time other than any other offender who share the same offense as Mr. Ecker shows prejudice as well as erroneous advice by [appellate] counsel.

(ECF No. 8-1, PageID #: 299–305). On August 30, 2018, the Ninth District Court of Appeals of Ohio denied Ecker's application to reopen his appeal. (ECF No. 8-1, PageID #: 365–305). Ecker did not appeal this decision.

## IV.    Federal Habeas Corpus Petition

On May 7, 2019, Ecker petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). Ecker asserted four grounds for relief:

**GROUND 1:** The State moved to consolidate the two cases on March 24, 2016. The State argued the evidence was simple and direct on each case. Mr. Ecker disagrees with the State's assertions and moved in opposition which did serve as motion to sever.

**GROUND 2:** Mr. Ecker's rights to due process and a fair trial were violated when the [trial] court allowed the state to present irrelevant and overly prejudicial evidence about prior bad acts when the court abused its discretion when it admitted evidence about prior bad acts concerning Ecker's unwillingness to "wear a wire" as an informant on his drug supplier, and admitted testimony regarding the number of opioid overdose deaths that had occurred in Summit County up to that point.

**GROUND 3:** The prosecutors' misconduct denied Mr. Ecker a fair trial and due process of law when the prosecutor asked questions to witnesses concerning the number of overdose deaths in Summit County, and their references to those deaths in closing argument.

**GROUND 4:** The trial court violated Mr. Ecker's right to due process and a fair trial through cumulative error and his trial was stained with the flaws that are identified herein.

(ECF No. 1). Respondent filed the return of writ on September 24, 2019. (ECF No. 8). Ecker filed his traverse on November 19, 2019. (ECF No. 10).

## V.  Legal Standards

### A.  Jurisdiction

District courts may entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b). A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Ecker, and Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Ecker's § 2254 petition.

### B.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted).

C.      **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.* (citations omitted).

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. at 102 (citations omitted). "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**VI.    Discussion**

    **A.    Ground 1: Joinder of Criminal Cases**

In his first ground for relief, Ecker argues that he was denied a fair trial due to the joinder of his two criminal cases. He asserts that the joinder of the two cases allowed the prosecution to introduce evidence that would have been inadmissible if the cases were tried separately. Ecker argued this to the court of appeals. The court rejected his argument, reasoning:

> Mr. Ecker argues that he was prejudiced by the joinder of his indictments for trial because it allowed the State to use the evidence against him in separate cases "as an aggregate indication as to the validity of each claim." He avers that, had his cases been tried separately, the State would not have been permitted to introduce other acts evidence from one case in the other. Further, he avers that the joinder prejudiced him because the evidence in each case was not simple and direct. He notes that the 2015 case involved complicated DNA testimony and the 2016 case posed certain obstacles for the parties, such as how to keep from the jury the fact that he was on parole at the time of his arrest. According to Mr. Ecker, he was held accountable for the drugs the police found in the 2016 case because the jury was aware that, at the time of his arrest, he had already been charged with a homicide and multiple drug offenses.
>
> With respect to Mr. Ecker's 2015 case, the State presented evidence that he had been associating with the victim, J.C.H., for several months before her death. The two exchanged text messages wherein they repeatedly arranged to meet so that J.C.H. could purchase either marijuana or heroin from him. There was evidence that they were together directly before J.C.H. overdosed and that Mr. Ecker's DNA profile could not be excluded as the source of the major profile analysts found on one of the baggies in her possession when she died.
>
> J.C.H. died as a result of a fentanyl overdose. The State presented evidence that the police searched Mr. Ecker's residence two days after her death and found fentanyl, alprazolam, suboxone, marijuana, needles, digital scales, and drug packaging materials in his basement and two bindles of fentanyl on his person. Additionally, two former addicts testified against Mr. Ecker. The first addict testified that he spoke with Mr. Ecker after J.C.H.'s death and Mr. Ecker (1) admitted that he had sold J.C.H. narcotics just before she overdosed, and (2) stated that he was trying to secure more of that "real good dope." The second addict was present when the police raided Mr. Ecker's residence and testified that he was there because he had just purchased heroin from Mr. Ecker.

With respect to the 2016 case, the State presented evidence that the police came to Mr. Ecker's apartment to follow up on a call they had received. There was no mention of his being on parole, but there was testimony that a search ensued because officers spotted contraband while walking through the apartment. Mr. Ecker was present at the time along with his girlfriend and another male. The search resulted in officers finding fentanyl, methamphetamine, cocaine, drug packaging materials, a digital scale, a snort straw, and three cell phones. The narcotics that they found had been wrapped in women's underwear and tucked into a pair of women's boots. Even so, the State produced evidence that, while being held in jail on the 2015 case, Mr. Ecker made several phone calls and spoke with at least one individual about securing a new drug supplier in anticipation of his release. The State also produced evidence that, after his release, Mr. Ecker exchanged numerous text messages with people, making arrangements to sell them various narcotics. In several of the messages, he referenced having his girlfriend make his deliveries for him.

As noted, prejudice as a result of joinder will not lie if (1) evidence of the joined offenses otherwise would have been admissible in separate trials as other acts evidence, or (2) the evidence of each crime was simple and direct. *Kolvek*, 2017-Ohio-9137, at ¶ 18. Even assuming that the other acts exception does not apply here, the record supports the conclusion that the evidence against Mr. Ecker was simple and direct. *See Lott*, 51 Ohio St.3d at 163. "Joinder may be prejudicial when the offenses are unrelated and the evidence as to each is very weak * * *, but it is otherwise when the evidence is direct and uncomplicated and can reasonably be separated as to each offense * * *." *State v. Brooks*, 44 Ohio St.3d 185, 193, 542 N.E.2d 636 (1989), quoting *State v. Torres*, 66 Ohio St.2d 340, 343-344, 421 N.E.2d 1288 (1981). The evidence against Mr. Ecker was not weak. In each of his respective cases, the State produced compelling, circumstantial evidence tending to show that he possessed and trafficked in large quantities of narcotics and sold a lethal dose of fentanyl to J.C.H. The two cases pertained to different dates and locations, and "the evidence of each crime [was] uncomplicated," such that there was little danger of the jury confusing the evidence on each charge. *State v. Hamblin*, 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988). "The fact that the jury heard cumulative evidence against [Mr. Ecker] does not by itself demonstrate prejudice, as that fact is true in every trial where indictments or defendants are jointly tried." *State v. Samuels*, 9th Dist. Summit Nos. 25982, 25983, 25984, 2012-Ohio-5401, ¶ 13. "While a joint trial may have detracted from the believability of

[his] defense, the joinder was permissible so long as the evidence of
each case was simple and distinct." *Id.* at ¶ 14. Because the record
supports that conclusion, this Court cannot conclude that the trial
court abused its discretion when it joined his indictments for
trial. *See State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-
908, ¶ 30; *State v. Boden*, 9th Dist. Summit No. 26623, 2013-Ohio-
4260, ¶ 46-47. Accordingly, Mr. Ecker's first assignment of error is
overruled.

*Ohio v. Ecker*, 108 N.E.3d 708, 713–15 (Ohio Ct. App. 2018).

After reviewing the appellate court's decision, this Court concludes that it is consistent

with federal law. Because the appellate court applied state law and errors in application of state

law are usually not cognizable, the issue before the Court is not whether the failure to sever was a

violation of state law, but whether it denied Ecker due process under the Fourteenth Amendment.

*Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). Thus, the petitioner must show that the failure

to sever "result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial." *Id.*

(alterations in original) (quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). It is not

enough to show the potential for prejudice, as that exists whenever offenses are joined in a single

trial. *See id.* Instead, the petitioner must demonstrate *actual* prejudice to justify a grant of a writ of

habeas corpus. *Id.* To show actual prejudice, the joinder must have had a "substantial and injurious

effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449

(1986) (citations omitted).

Ecker asserts that "it was prejudicial to allow the 2016 drug trafficking charges into the

2015 homicide case because the jury in the 2015 homicide case would not have heard that [Ecker]

was being accused of having access to fentanyl, the same drug that [he] was accused of having

sold to [the victim] that was to be the cause of her death." (ECF No. 10 at 7). However, the Court

fails to understand how that is true. The 2015 indictment included two charges of aggravated

trafficking in drugs for knowingly selling or offering to sell fentanyl—originally Count 1 and

Count 10. (ECF No. 8-1, PageID #: 59, 66). While the prosecution dismissed count one, they moved forward with Count 10—renumbered Count 6. (ECF No. 8-1, PageID # 93). Thus, even if the criminal cases had been tried separately, the jury would have heard about the original search of Ecker's apartment which led to police discovering fentanyl both in the apartment and in Ecker's pockets. The inclusion of the 2016 trial was not necessary to present evidence of Ecker's possession of fentanyl.[1] The Court, therefore, finds that the joinder of the criminal cases could not have led to the actual prejudice Ecker alleges.

Moreover, any prejudice that may have occurred was limited when the trial court gave the jury instructions for considering each count. The court instructed:

> The charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charged.

(ECF No. 8-11, PageID #: 1850). "Error based on misjoinder is almost always harmless where, as here, the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007). The Supreme Court instructs that a court "should presume that the jury followed this instruction and did not make an improper propensity inference." *United States v. Chavis*, 296 F.3d 450, 462 (6th Cir. 2002) (citing *Lane*, 474 U.S. 438). The trial court's instruction, therefore, limited any potential prejudice. Accordingly, Ecker's first ground for relief is without merit.

---

[1] Additionally, Ecker generally argues that the joinder allowed "facts that would not have been mentioned in each other's cases without the joinder." (ECF No. at 7–8). However, Ecker does not explain how this led to actual prejudice. Without the 2016 case, the 2015 case still would have included witness testimony about Ecker's relationship with the victim and evidence of Ecker possessing and selling fentanyl. The 2016 case merely added facts about another instance of possessing and selling fentanyl. The Court fails to see how this amounts to actual prejudice.

**B.      Ground 2: Evidentiary Rulings**

In his second ground for relief, Ecker takes issue with two of the trial court's evidentiary rulings, arguing that they violated his right to a due process and a fair trial. The first evidentiary ruling in dispute is the trial court's decision to allow evidence of Ecker's unwillingness to wear a wire and act as an informant with his drug supplier. The second evidentiary ruling in dispute is the trial court's admission of testimony regarding the number of opioid deaths that had occurred in Summit County. The Court will take each argument in turn.

**i.      Evidence of Ecker's Unwillingness to Wear a Wire**

At trial, the detective that interviewed Ecker following his arrest testified that Ecker was not willing to divulge the name of his drug supplier and would not wear a wire or act as an informant. Ecker argues that the trial court's admission of the testimony concerning his refusal to wear a wire was irrelevant, overly prejudicial, and evidence of prior bad acts prohibited by Ohio R. Evid. 404(B). Respondent argues that issues regarding the admissibility of evidence are not cognizable. Ecker failed to respond to this argument.

Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citations omitted). A court can, however, grant habeas relief in cases where the "state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation." *Id*. (citations omitted). To meet this standard, the Sixth Circuit requires "a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Id*. (citations omitted). However, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Ecker cannot, therefore, demonstrate that the state's

evidentiary ruling amounted to a due-process violation. Accordingly, this argument is not cognizable on federal habeas review.

### ii.      Evidence Regarding the Number of Opioid Deaths in Summit County

Ecker also argues that the trial court erred by admitting testimony related to the increasing number of opioid deaths in Summit County. Respondent asserts that this argument has been procedurally defaulted. Ecker failed to respond to this argument.

When a state court declines to address a petitioner's federal claims because the petitioner failed to meet a state procedural requirement, federal habeas review is barred if the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *abrogated on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). "A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Here, the court of appeals refused to address the merits of Ecker's argument because he failed to provide any explanation of the issue in his brief, relying on Ohio App. R. 16(A)(7). Ohio App. R. 16(A)(7) requires an appellant to provide an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Failure to follow this rule allows the court to "disregard" the assignment of error.

Ohio App. R. 12(A)(2). This Court previously concluded that Ohio App. R. 16(A)(7) is an adequate and independent state ground upon which to foreclose relief. *See Little v. Brunsman*, No. 1:12-CV-145, 2014 WL 4354547, at *23 (N.D. Ohio Sept. 2, 2014). Thus, habeas review is barred so long as Ecker cannot show cause or actual innocence.

Ecker does not meet an exception that would excuse his procedural default. First, Ecker failed to establish cause. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" will establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted). However, "[t]o constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Ecker failed to preserve any ineffective assistance of counsel claim in state court. While Ecker applied to reopen his appeal due to ineffective assistance of counsel, he failed to appeal the denial of his application to the Ohio Supreme Court. Because Ecker can no longer bring this appeal,[2] Ecker procedurally defaulted any ineffective assistance of counsel claim. *See English v. Banks*, No. 1:11-cv-675, 2012 WL 3070742, at *15 (S.D. Ohio July 30, 2012) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default." (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999))). Ecker, therefore, cannot establish cause for his procedural default.

Second, Ecker failed to demonstrate that he is actually innocent. To demonstrate actual innocence, "a petitioner must come forward with 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

---

[2] Ohio S.Ct. Prac. R. 7.01(A)(1) provides forty-five days from the day the court of appeals files its judgment entry to appeal to the Ohio Supreme Court. This deadline has passed in this case. A delayed appeal is not available. Ohio S.Ct. Prac. R. 7.01(A)(4)(c).

that was not presented at trial.'" *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012) (citations omitted). Ecker did not come forward with any new evidence. Accordingly, this aspect of Ecker's second ground for relief should be dismissed as procedurally defaulted.

**C.    Ground 3: Prosecutorial Misconduct**

In his third ground for relief, Ecker argues that the prosecutor denied him a fair trial and due process of law. Ecker alleges that there were four instances of prosecutorial misconduct: three witnesses were asked about the number of overdose deaths in Summit County and the prosecution referred witness Detective Harvey's answers in its closing argument. Respondent argues that two of the instances complained of—the questioning of Detective Harvey and the reference to his testimony in closing—are procedurally defaulted. The Court agrees. As previously discussed, when a state court declines to address a petitioner's federal claims because the petitioner failed to meet a state procedural requirement, federal habeas review is barred if the state judgment rested on "independent and adequate" state procedural grounds. *Coleman*, 501 U.S. at 729.

Here, the appellate court declined to address the merits of Ecker's arguments as it pertained to Detective Harvey's testimony and the prosecution's references to it in closing because Ecker failed to object to it at trial. "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Ecker cannot show cause and prejudice because he did not argue ineffective assistance of trial counsel for failing to object. Any such argument is, therefore, also procedurally defaulted. Similarly, Ecker did not provide any new evidence indicative of actual innocence. Thus, the Court will not consider Ecker's argument as to Detective Harvey's testimony and the references to it in closing.

The other two alleged instances of prosecutorial misconduct—the questioning of two other witnesses about the number of overdoses in Summit County—however, are properly before this Court. Ecker argues that the questioning of the two witnesses denied Ecker a fair trial and due process of law. Ecker presented this argument to the court of appeals. The court rejected the argument, explaining:

> In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *See State v. Smith*, 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557, 1995- Ohio 104, 651 N.E.2d 965 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *See State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, 900 N.E.2d 565, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Thus, "[t]he prosecutor's conduct must be considered in the context of the entire trial." *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 39. . . .

> Even assuming that the prosecutors engaged in misconduct when they asked two witnesses about the local trends in overdose deaths, Mr. Ecker has not shown that, but for their misconduct, the jury would not have convicted him. *See Lollis*, 2010-Ohio-4457, at ¶ 24. First, the testimony that the prosecutors elicited on those two occasions was merely cumulative of the testimony they elicited from Detective Harvey. *See, e.g., State v. Christian*, 9th Dist. Summit No. 27205, 2015-Ohio-1720, ¶ 33 (admission of evidence harmless where evidence merely cumulative of other evidence presented at trial). Second, "[w]ithin the context of the entire trial, this Court concludes that [Mr. Ecker's] trial was not unfair because it appears beyond a reasonable doubt that the trier of fact would have convicted [him] even in the absence of the State's improper questioning * * *." *Pleban*, 2011-Ohio-3254, at ¶ 43. As set forth above, the State produced a wealth of evidence tending to show that Mr. Ecker had substantial quantities of narcotics in his possession,

> that he admitted having sold heroin to J.C.H. before, that he, in fact, had sold her fentanyl directly before her death, and that he routinely sold narcotics to other individuals. He has not shown that testimony about trends in overdose deaths, in general, affected the outcome of his trial. Accordingly, his third assignment of error is overruled.

*Ohio v. Ecker*, 108 N.E.3d 708, 717–18 (Ohio Ct. App. 2018).

After reviewing the appellate court's decision, this Court concludes that it is consistent with federal law. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millener v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citations omitted). To obtain relief, the petitioner "must show that the state court's rejection of his prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Moore v. Stewart*, No. 15-cv-10613, 2017 WL 2984152, at *5 (E.D. Mich. July 13, 2017) (quoting *Parker v. Matthews*, 567 U.S. 37, 45 (2012)). To violate a defendant's constitutional rights, the prosecutorial misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The testimony Ecker complains of was given by the Summit County Chief Medical Examiner and Detective Michael Schmidt. The Medical Examiner stated that her office handled 140 heroin or fentanyl overdoses in 2015—a number that has been increasing since 2013. (ECF No. 8-9, PageID#: 1496–97). Detective Schmidt testified that overdose deaths used to involve mostly heroin or a mix of heroin and fentanyl but now involved primarily fentanyl. (ECF No. 8-10, PageID #:1526–27). While these statements indicate that there was a recent increase of fentanyl related deaths in Summit County that may have alerted the jury to a broader problem, the Court concludes that the statements did not amount to a due process violation. As the appellate court correctly noted, the prosecution presented more than enough evidence demonstrating that Ecker

possessed substantial quantities of narcotics, including fentanyl, and that he admittedly sold them to the victim before her death. The court of appeal's rejection of Ecker's prosecutorial misconduct claim was not so lacking in justification as to amount to an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Thus, this argument is without merit. Accordingly, Ecker's third ground for relief is partially procedurally defaulted and partially without merit.

### D. Ground 4: Cumulative Error

In his final ground for relief, Ecker argues that the cumulative errors of the trial court violated his right to due process and a fair trial. However, as Respondent points out, "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citations omitted). Accordingly, Ecker's final ground for relief should be dismissed as non-cognizable.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of

appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.     Analysis

Ecker's grounds for relief are either meritless, procedurally defaulted, or not cognizable. If the Court accepts the foregoing recommendation, then Ecker has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue Ecker a certificate of appealability.

## VIII.   Recommendation

Ecker has presented only meritless, procedurally defaulted, or not cognizable claims. Thus, I recommend that the Court DENY Ecker's petition and not grant him a certificate of appealability.

Dated: February 8, 2022

<u>s/ *Carmen E. Henderson*</u>
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).